In re Fred Stuart RAPPAPORT Barbara Ann Rappaport, Debtors.

Fred Stuart RAPPAPORT Barbara Ann Rappaport, Plaintiffs,

v.

COMMERCIAL BANKING CORPORATION, assignee of Philadelphia National Bank, Defendant.

Bankruptcy No. 80–02996G.
Adv. No. 81–1643G.

United States Bankruptcy Court,
E. D. Pennsylvania.

May 13, 1982.

Jack K. Miller, The Bankruptcy Clinic, Inc., Philadelphia, Pa., for debtors/plaintiffs, Fred Stuart Rappaport and Barbara Ann Rappaport.

Jay E. Goldfarb, Goldfarb & Spigler, Philadelphia, Pa., for defendant, Commercial Banking Corp.

Leo F. Doyle, Philadelphia, Pa., trustee.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether a creditor's judgment lien impairs the debtors' claimed exemption in their residence so as to permit them to avoid that lien pursuant to § 522(f)(1) of the Bankruptcy Code ("the Code"). We conclude that the debtors may avoid the judgment lien since, as of the date of the filing of their petition for relief, that lien impaired the debtors' claimed exemption in their residence.

The facts of the instant case are as follows: [1] On November 14, 1980, Fred and Barbara Rappaport ("the debtors") filed a petition for relief under chapter 7 of the Code. On November 16, 1981, the debtors filed the instant complaint against the Philadelphia National Bank ("the bank") to avoid a judgment lien on the debtors' resi-

dence. At the trial, that complaint was amended to substitute the Commercial Banking Corporation ("CBC") as the defendant since the judgment in question had been assigned by the bank to CBC on June 15, 1978.

In support of their complaint, the debtors offered evidence through an expert real estate appraiser that the value of their residence was $54,000.00. The debtors also offered evidence that, as of the date of the filing of their petition, the balance due on the first mortgage on their residence was $36,518.07, the balance due on the second mortgage was approximately $4,600.00 and the balance due on the CBC judgment was approximately $16,000.00. The debtors also introduced into evidence a copy of their chapter 7 petition in which they had claimed as exempt their equity in their residence under § 522(d)(1) of the Code.[2] The debtors, consequently, argued that, since there was only approximately $13,000.00 in equity after deducting the first and second mortgage balances and since they were entitled to $15,000.00 as an exemption, the judgment of CBC impaired their exemption and was, thus, avoidable *in toto* pursuant to § 522(f)(1) of the Code.[3]

In opposition to that complaint, CBC raised two defenses. The first is a legal one and one which is easily disposed of by us.[4] CBC asserts that its judgment lien is not avoidable pursuant to § 522(f)(1) because that lien was created prior to both the enactment and effective dates of the Code and to permit its avoidance by a provision of the Code would be unconstitutional. The United States Court of Appeals for the Third Circuit has already addressed this issue and has held that the retroactive application of § 522(f)(1) of the Code to avoid pre-Code liens is not unconstitutional.[5] Consequently, we conclude that CBC's argument on this point is without merit.

CBC's second defense is that its lien may not be avoided entirely because the debtors have sufficient equity in their residence to cover their exemptions and at least part of CBC's lien. In support of this argument, CBC offered the testimony of its own expert real estate appraiser who stated that, in his opinion, the fair market value of the debtors' residence is $67,500.00. Thus, CBC asserts that, after the first and second mortgage balances are deducted, there is approximately $26,000.00 which allows the debtors to take their exemption while leaving about $11,000.00 for CBC's judgment lien.

---

2. Section 522(d)(1) of the Code provides, in part:
    (d) The following property may be exempted under subsection (b)(1) of this section:
    (1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence. 11 U.S.C. § 522(d)(1). Section 522(m) allows each debtor in a joint case to take exemptions. 11 U.S.C. § 522(m).

3. Section 522(f)(1) provides:
    (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
    (1) a judicial lien.
    11 U.S.C. § 522(f)(1).

4. In its answer and counterclaim CBC also requested relief from the automatic stay to permit it to proceed to enforce its lien on the debtors' property. At the trial herein, we deferred any decision on that issue until the issue

of the avoidability of CBC's lien could be decided. In light of our decision herein, we conclude that the issue of relief from the stay is now moot.

5. *In re Ashe*, 669 F.2d 105 (3d Cir. 1982). Accord, *In re Jones*, 13 B.R. 945 (Bkrtcy.E.D.Pa. 1981); *In re Burkholder*, 12 B.R. 585 (Bkrtcy.E.D.Pa.1981); *In re Paden*, 10 B.R. 206, 4 C.B.C.2d 270 (Bkrtcy.E.D.Pa.1981); *In re Sweeney*, 7 B.R. 814, 6 B.C.D. 1377, 3 C.B.C.2d 523 (Bkrtcy.E.D.Wis.1980); *In re Joyner*, 7 B.R. 596, 3 C.B.C.2d 436 (Bkrtcy.M.D.Ga.1980); *In re Goodrich*, 7 B.R. 590 (Bkrtcy.S.D.Ohio 1980); *In re Augustine*, 7 B.R. 565 (Bkrtcy.W.D.Pa. 1980); *In re Brown*, 7 B.R. 264 (Bkrtcy.N.D. Tex.1980); *In re Middleton*, 7 B.R. 3 (Bkrtcy.N.D.Ga.1980); *In re Baker*, 5 B.R. 397 (Bkrtcy.W.D.Mo.1980); *In re Boulton*, 4 B.R. 498, 6 B.C.D. 233 (Bkrtcy.S.D.Iowa 1980); *In re Ambrose*, 4 B.R. 395, 2 C.B.C.2d 267 (Bkrtcy.N.D.Ohio 1980); *In re Steinart*, 4 B.R. 354, 6 B.C.D. 623, 2 C.B.C.2d 166 (Bkrtcy.W.D.La.1980); *In re Hill*, 4 B.R. 310, 6 B.C.D. 307, 2 C.B.C.2d 123 (Bkrtcy.N.D.Ohio 1980).

Therefore, the result in this case depends upon which of the two real estate appraisals we accept. We found both of the real estate appraisers to be experts in their field and found the testimony of each to be credible. Upon interrogation by us, it became evident that the difference in value attributed to the subject property was a result of the time when the appraisals had been made. The debtor's appraiser made his appraisal in September, 1981, and his value was computed after considering sales of comparable properties which occurred before that date.[6] The appraiser employed by CBC, on the other hand, made his appraisal in January, 1982, and it was based on a comparison of similar properties sold in October and December, 1981. Consequently, we conclude that the difference in the opinions given as to the fair market value of the debtors' property is a result of the appreciation in value of that property over the ensuing time.

■■■ The obvious question, then, is who is entitled to benefit from the appreciation of the debtors' property—the debtors or CBC. We conclude that the debtors should be the ones to benefit from any appreciation of their property *after* the filing of their petition for relief. As stated by the bankruptcy court in *In re Tanner*[7] in discussing a related issue:

In particular, is the avoidance of a real property mortgage to the extent it exceeds the value of the collateral consistent with the Code's policy of a "fresh start" for an "honest but unfortunate debtor?"

The assets of the Debtor are determined at time of filing. Apart from allowable exemptions, the remainder of the Debtor's assets are distributed to his creditors. The Debtor receives a discharge and a new beginning. *Property acquired afterward is not subject to claims of pre-petition creditors. Appreciation of property or an increase of equity ownership by the reduction of an out-*

standing *mortgage are examples of after acquired property* which are attributable to the Debtor's post-bankruptcy efforts. If a real property mortgage is not avoidable to the extent it is undersecured, a pre-petition creditor will impair the Debtor's fresh start by partaking in his post-petition property acquisitions.

The Code scheme of Section 506 is that creditors receive through the valuation procedure of the Bankruptcy Court the same property value that they would receive through a non-bankruptcy forced sale of the Debtor's nonexempt assets *as of the petition date.*[8]

We believe that the court's analysis of § 506 in *Tanner* is applicable in the instant case dealing with § 522(f). Both § 506 and § 522(f) permit a debtor to avoid liens on their property. Section 506 allows a debtor to avoid a lien to the extent that the value of the property is less than the liens on that property while section 522(f) allows a debtor to avoid certain liens to the extent that those liens impair the debtor's exemption in the property. Both of those sections are intended to aid the debtor's fresh start and to insure that the debtor's post-petition efforts enure to his benefit and not to the benefit of his creditors. Consequently, we conclude that, as in *Tanner*, the value of the debtor's property for the purpose of deciding whether a lien is avoidable under § 522(f) of the Code should be determined as of the date of the filing of the debtor's petition.

In the instant case, the debtors filed their petition for relief in November, 1980. The debtors' real estate appraiser testified that as of September, 1981, the property was worth $54,000.00 based on sales of comparable properties made in May, 1980; July, 1980; and July, 1981.[9] We find that that value is closer to the fair market value of the property in November, 1980, than the $67,500.00 value given by CBC's appraiser which was based on sales made in October

---

**6.** The dates of the comparable sales were July, 1981; July, 1980 and May, 1980.

**7.** *In re Tanner*, 14 B.R. 933, 8 B.C.D. 347 (Bkrtcy.W.D.Pa.1981).

**8.** *Id.* at 349 (emphasis added).

**9.** *See* note 6, *supra.*

and December, 1981. Therefore, we determine that the value of the debtors' residence is not more than $54,000.00 and that, after deducting the first and second mortgages on the property, there is only an equity of approximately $13,000.00. Consequently, we conclude that the debtors are entitled to avoid the entire judgment lien held by CBC because it impairs their exemption in their residence.

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.