In re Thomas J. BICKLEMAN, Individually and t/d/b/a Tom's Auto Reconditioning and t/d/b/a Bickleman Enterprises, Debtor.

GREAT VALLEY SAVINGS ASSOCIATION, Plaintiff,

v.

Thomas J. BICKLEMAN, Individually and t/d/b/a Tom's Auto Reconditioning and t/d/b/a Bickleman Enterprises, Defendant,

and

Ellis Brodstein, Esquire, Trustee.

Bankruptcy No. 82–00513 T.
Adv. No. 85–0727.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 9, 1987.

**136**

Frederick L. Reigle, Reading, Pa., for defendant (debtor).

Ellis Brodstein, Reading, Pa., Trustee.

Heidi B. Masano, Fry & Golden, Wyomissing, Pa., for plaintiff Great Valley Sav. Ass'n.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Debtor filed a voluntary petition for relief under Chapter 7 and claimed an exemption in his residential property pursuant to 11 U.S.C. § 522. The first mortgagee has filed the instant complaint seeking this Court's determination of the proper distribution of proceeds resulting from a Sheriff's sale of the residence. The debtor had previously avoided a judicial lien which held first filing position. Plaintiff's mortgage stands in second position. The debtor seeks payment, as part of his statutory exemption, prior to any distribution to the first mortgagee. We hold that since debtor's residence was fully encumbered, he may not now step into the avoided judicial lienor's priority position in order to preserve his exemption to the detriment of non-avoidable lienholders.

Thomas J. Bickleman ("Debtor") filed a Petition in Bankruptcy on February 5, 1982. The debtor was the owner of real property located at Box 169, R.D. 2, Birdsboro, Pennsylvania ("Premises"). Several liens were lodged against the premises at the time of filing. These encumbrances include: (1) a judicial liens in favor of Exeter Associates, Inc. ("Exeter") in the amount of $4,800.00 which was recorded April 28, 1978; (2) a mortgage held by Great Valley Savings Association ("GVSA") in the sum of $24,483.94 [1] recorded February 1, 1980 [2]; (3) a mortgage in favor of the National Bank of Boyertown ("NBB") in the amount of $5,000.00; (4) a tax lien in favor of the Department of Revenue, Commonwealth of Pennsylvania, in the sum of $632.01.[3]

On August 2, 1982, GVSA filed for relief from the automatic stay.[4] Before a hearing was held on GVSA's Motion for Relief, the debtor filed an Application To Avoid the Lien of Exeter, GVSA and NBB. Exeter defaulted by failing to answer the debtor's application. Consequently, their lien was avoided. The debtor, however, con-

---

1. The GVSA mortgage amount is as of April 30, 1983. This sum is with interest continuing at a rate of ten and three-quarters percent per annum.

2. The GVSA mortgage is recorded in the Mortgage Book Volume 1310, Page 1058 of Berks County Records to be a first mortgage. Debtor's Schedule of Assets and Liabilities lists GVSA as having a first mortgage. Apparently there was an error in the title search. In actuality, Exeter held a priority position.

3. No dates are available from the record as to the recording of either the NBB lien or the tax lien. It is presumed however, for the purposes of this proceeding, that they were filed after the Exeter and GVSA liens.

4. An amended Complaint was filed September 2, 1982.

ceded that in light of the decision by this Court in *In re Baerwald*, 27 B.R. 142 (Bkrtcy, E.D. Pa.1983), he was not entitled to avoid the liens of GVSA and NBB.[5] Relief from the automatic stay was granted to GVSA by Order of this Court May 15, 1985.

The debtor's residence was ultimately sold at Sheriff's sale on October 11, 1985 to GVSA for the sum of $11,501.00. The Sheriff of Berks County's Schedule of Proposed Distribution contemplates a disbursement of $6448.56 to the debtor. Such disbursement is based on debtor's claim that because he has successfully avoided the Exeter lien, he now stands in Exeter's "first position" for distribution purposes.

On November 18, 1985, GVSA timely filed an exception to the Sheriff's Schedule of Proposed Distribution. GVSA also commenced the present adversary action. The sole issue before the Court is whether the debtor's avoidance of the Exeter judgment lien on his residence entitles him to an exception claim with distribution priority over the GVSA mortgage.

We hold that the debtor is not so entitled. The debtor makes two principal arguments in support of his entitlement to an exception payment from the foreclosure proceeds. First, the debtor asserts that Section 522 allows debtors to claim exemptions from the value of property used as a residence. Second, the debtor asserts that his exemption takes the priority position held by the lien which he successfully avoided thereby entitling him to his $6448.56 claim before all other lien holders.

The debtor contends that by successfully avoiding the Exeter lien, there remains exemption for him under 11 U.S.C. 527. Section 522(d)(1) allows each debtor to exempt "the debtor's aggregate *interest,* not to exceed $7,500.00 in value in real property ... that the debtor ... uses as a residence." Under this section the debtor seeks to exempt his residence to the extent of $6448.56. Section 522(d)(1) requires the presence of three factors in order for debtor to prevail: first, the property must constitute the debtor's residence; second, the exemption may not exceed $7,500.00; third, the exemption is limited to the debtor's interest in the property.

In the case at hand, no allegation has been made claiming debtor's property to be anything but his residence. Next, the debtor claims an amount less than the statutory maximum. Third, the debtor claims he has interest in the property. In our view, the debtor does not have an "interest" as previously defined by the Third Circuit in the matter of *In re Simonson*, 758 F.2d 103 (3d Cir.1985). In that case Judge Gibbons, writing for the majority, determined that the term "interest," for exemption purposes, "was intended to mean an interest of the debtor measured by taking into account those interests of other parties which may not be avoided under Section 522(f)." *In re Simonson*, 758 F.2d at 105. Specifically, the Court held "that debtors had *no interest* in real property which they used as a residence to which exemption could attach, where consensual liens exceed property's sale proceeds" [emphasis added] 758 F.2d at 103, 104.

■ In the case sub judice the parties have stipulated to the fact that the total amount of consensual liens against the real estate of the debtor, including the avoided lien, exceeds the fair market value of the house.[6] Hence, the debtor has no interest which entitles him to a Section 522 exemption.

---

5. The question before the Court was whether a debtor may, pursuant to § 522(f)(1) of the Bankruptcy Code, 11 U.S.C. § 522(f)(1), avoid a mortgage against his real property when the mortgage attached to the subject property subsequent to an avoidable judicial lien. This court held that a junior mortgage may not be avoided because a mortgage can not be avoided under § 522(f)(1) regardless of its priority relationship with any other liens.

6.

| Exeter | judicial lien | $ 4,800.00 |
|---|---|---|
| GVSA | mortgage | 24,483.94 |
| NBB | mortgage | 5,000.00 |
| Comwlth Pa. | tax lien | 632.01 |
| Total encumbrance | | $34,915.95 |
| less avoided Exeter lien | | 4,800.00 |
| Outstanding encumbrance | | $30,115.95 |
| Proceeds from sale of home | | $11,501.00 |

The debtor further argues that since he was successful in avoiding the Exeter lien, he has the right to stand in the position of Exeter and collect his exemption. Presumably, the debtor relies upon the theory that under Section 522(i)(2) "a transfer avoided under ... subsection (f) ... of this section ... may be preserved for the benefit of the debtor to the extent that the debtor may exempt such property under subsection g." Again, the controlling case is *Simonson*. The court there would not allow a debtor to claim an exemption which would enjoy priority over non-avoidable, consensual lienholders. Speaking to this point, Judge Gibbons stated:

"... the debtor had *no interest* in the property to which an exemption could attach. Had the property produced at sale proceeds in excess of the consensual liens, which are not subject to avoidance under Section 522(f)(1) or (2), the debtor would have had an exemptible interest in the excess *behind* the liens of the first and second mortgages ... We have found no indication in the legislative history of section 522 suggesting that congress intended it to be a means of creating equity, which did not otherwise exist, in property for the benefit of the debtor."

At 105, 106 [emphasis supplied].

For the aforementioned reasons, we hold that the debtor; having no interest in the residential property pursuant to Section 522, is not entitled to satisfy his exemption therein. If the debtor were permitted stand in the priority position of Exeter and collect an exemption in front of the other lienholders in these circumstances, he would be recipient of a windfall not contemplated by Congress as part of a debtor's fresh start.

An appropriate order will follow.